UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JONATHAN MANNION

      Plaintiff,      04 CIV 1187 (LAK)

-against-         **Declaration of Jonathan Mannion**

COORS BREWING COMPANY and
CAROL H. WILLIAMS ADVERTISING
        Defendants.
------------------------------------------------------------x

1.  I am a freelance photographer. My area of specialty is to create portraits of top talents in the music industry and sports world, primarily of celebrity athletes and musicians in the Rap and Rhythm & Blues genre.

2.  In creating photographs of famous individuals I seek to achieve a representation of each that is unique to that person and his or her character, in effect, a portrait. This is achieved in different ways, often with clothing, personal accouterments, body positioning, posing of the model, camera angle, lighting and background and a combination of such elements, reaching for an overall persona of the character portrayed.

3.  In 1999, I was hired by SLAM magazine to shoot photographs of Kevin Garnett, a renowned basketball player who had initially been recruited from high school in South Carolina by the Minnesota Timberwolves. After six years with the Timberwolves, he had just signed a one year extension contract for one hundred and twenty-six million dollars. Plaintiff's Exhibit A. Mr. Garnett became a superstar; extraordinarily wealthy, with a superb physique, a legendary team player and a model for youth, a person of extraordinary strength, agility and beauty.

4.  The photographic shoot was held at Mr. Garnett's home. While I was formulating a context and concept in which to portray him, I noted that Mr. Garnett was wearing a platinum

and diamond necklace with the letters 'OBF' on it. He explained that 'OBF' stands for 'Original Block Family', which consists of a group of about seven to eight of his closest friends from South Carolina who all wear the same medallion.  Plaintiff's Exhibit A.  I asked him if he had other similar jewelry in his house and he said that he did.

5.      I then asked Mr. Garnett to "grab all of [his] jewelry."  I asked him to get it ALL.  The anticipated photograph was to express the idea to the public that he is the boss; he is the one holding all the money.  I also told him to dress in something very simple and plain to contrast the effect of the overabundance of jewelry.  He chose a white t-shirt.

6.      I wanted to create a classic, timeless portrait of power and opulence accurately portraying his financial status as one that is superior to even the most successful athletes and artists.

7.      As a result of my request, he went inside his house and he returned with all of his jewelry on.  As can be seen in the photograph, it consisted of platinum and diamonds, certainly more than most or all athletes and artists that I have photographed.  The use of all the jewelry was an extreme statement; artists and athletes certainly flaunt their jewelry but I wanted him to wear much more than anyone else would ordinarily wear.

8.      Some of Mr. Garnett's multiple necklaces that he is wearing in the photograph are his signature pieces.  One showcases a solid platinum basketball.  Another, his initials, 'KG' dipped 'in ice'.  Among the bracelets that he was wearing, is an exquisite round Rolex watch.

9.      I asked Mr. Garnett to look 'chilled-out' for the shoot; he hooked his thumbs on his pants' waistband exposing his bracelets and rings.

10.      I wanted something nondescript as the backdrop of the pictures.  I didn't want to show Mr. Garnett's house.  Contemporaneously with the shoot, there was a storm developing. Because of that, I chose to use the clouds and sky as the background to the photographs.  I

2

wanted the pictures to have a moody tone. I wanted to express the idea that storms are dangerous and so is this guy.

11. The photo, with others of Mr. Garnett, was published in the December 1999 issue of SLAM Magazine.

12. On or about November 2001, my office was approached by Cathy Cook, an employee of Defendant Carol H. Williams Advertising ("CHWA"). Ms. Cook, via e-mail, forwarded three proposed layouts for the Coors Light billboards' (commonly referred to as "comp boards") to my office. She wanted to know if I was interested in photographing models for a Coors beer campaign. I advised her that I was.

13. I also advised Ms. Cook that one of the photos in the proposed layouts for one of the comp boards was my own, e.g. the Kevin Garnett photograph.

14. The photograph was the one from SLAM Magazine. However, the text that had appeared over the photo in the magazine had been removed, Kevin Garnett's head and fingers had been cropped and the image of the torso was reversed. Other than that, the photo was clearly mine.

15. The comp board that was transmitted to me, using my photograph, is appended hereto as Exhibit B.

16. I learned subsequently that a Steve Greshaman, of Management Artists, which formerly represented some licensing for my photographs, had granted CHWA a limited license to use my photograph for the production of the comp boards. I find it inapposite that CHWA requested a license to use the image of my Kevin Garnett SLAM magazine photograph with his head and fingers cropped and then virtually reproduced the photograph without seeking a further license to do so.

3

17. The other two proposed layouts transmitted to me from CHWA, completely different in approach are appended hereto as Exhibits C and D. Although they are marketing the same product, they are so different from the proposed billboard using my image that they project a separate and distinct "concept and feel".

18. Ms. Cook also asked me to create an estimate of costs and fees for a projected two day shoot of the job.

19. I prepared an estimate and transmitted it to Ms. Cook. I never heard from her or anyone at CHWA again.

20. In or about 2001, my assistant, Louis Rivera and I were in Los Angeles on a shoot. While driving around he notice and pointed out to me the Coors image taken from my photograph on a billboard at La Cienaga and Rodeo Drive. Later we saw another billboard with the same image on Sunset Boulevard.

21. I subsequently caused an application for the copyright registration of the photograph to be submitted in August, 2003. However, because of problems locating an original issue of SLAM magazine, the registration of the copyright was not completed until May, 2004.

22. In the end, it is clear that the Defendants copied the essential original elements of my photograph, in the combination that I created to project the image of Kevin Garnett and appropriated it for themselves, without my permission or ratification, for commercial use.

JONATHAN MANNION

Dated: July 19, 2004
New York, New York

4