UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JONATHAN MANNION,

Plaintiff,

-against-                                                                 04 Civ. 1187 (LAK)

COORS BREWING COMPANY, et ano.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Mary D. Dorman
Paul O'Dwyer
*Attorneys for Plaintiff*

George R. Hirsch
Michael J. Connolly
Kristen McCaw Grossman
BRESSLER, AMERY & ROSS
*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

The jury in this copyright infringement action returned a special verdict finding that plaintiff's copyright in a photograph was valid and infringed by defendant Carol H. Williams Advertising, Inc. ("CHWA"), that defendant Coors Brewing Company ("Coors") was liable on a vicarious infringement theory, that plaintiff sustained actual damages of $30,000, and in substance that CHWA received net revenue of $50,000 as a result of its infringement of which $30,000 was included in the actual damages. The jury found also that plaintiff had failed to prove that Coors

received any gross revenue from the sale of a product containing or using the infringing image. Accordingly, the Court entered judgment against CHWA and Coors, jointly and severally, in the amount of $30,000 and against CHWA separately for an additional $20,000.

Plaintiff now moves for judgment as a matter of law, or for a new trial, in each case presumably limited to the issue of damages.

### *The Trial*

This is an action for copyright infringement. Plaintiff, a professional photographer, claimed that defendant CHWA infringed his copyrighted photograph of the basketball star, Kevin Garnett, in causing the production of an allegedly similar photograph for use on a billboard for Coors Light beer and that Coors is liable on a theory of vicarious infringement. The nature of the dispute and the issues presented are set out in my opinion denying summary judgment.[1]

#### *The Evidence*

As plaintiff does not here challenge the jury's findings on liability, little need be said concerning the bulk of the evidence. It suffices to note that plaintiff, a commercial photographer of some note, took the Garnett photograph some years ago, and it appeared in a basketball magazine called *Slam*. CHWA was hired by Coors to prepare advertising directed to the African-American community. Someone at CHWA was aware of the Garnett photograph and obtained from plaintiff a limited license to use it on comp boards – mockups of proposed advertisements for consideration

---

[1] *Mannion v. Coors Brewing Co.*, 377 F. Supp.2d 444 (S.D.N.Y. 2005).

by Coors. A comp board that included the Garnett photograph was prepared to illustrate the concept of one of several proposed billboards that together were but one part of the proposed campaign. After Coors approved the proposed campaign, CHWA, among other things, requested proposals from professional photographers, including plaintiff, to shoot the image that actually would be used on the billboard in question. A model was recruited using casting specifications that included a cropped version of plaintiff's Garnett photograph. A photographer other than the plaintiff was engaged, and he shot the infringing image pursuant to production notes that contained a copy of the Garnett photograph. It therefore perhaps is not surprising that neither side challenges the jury's finding that the image ultimately used by CHWA and Coors infringed plaintiff's work.

The damage case was simple as well, if not entirely convincing. Plaintiff sought both actual damages and infringers' profits pursuant to Section 504(b) of the Copyright Act of 1976.[2]

Plaintiff's evidence of actual damages was limited. Mannion testified that he bid $45,970 (a $30,000 fee plus expenses) to CHWA to shoot the billboard image.[3] The photographer who in fact was hired charged a total of $21,305.[4] Mannion argued in closing that the saving of the

---

[2] 17 U.S.C. § 504(b).

[3] He testified also that his bid, had it been accepted, would have covered the right to use the new image on the billboard. *See* Grossman Decl. Ex. B, at 5:10-18 (summation referring to Mannion testimony). Although he did not put it this way, the thrust of the latter point was that the fee would have purchased not only his services, but the right to use the new image notwithstanding that it probably would have been substantially similar to plaintiff's copyrighted Garnett image.

[4] Dorman Decl. Ex. E.

difference ($24,665) was the motive for the infringement and that the measure of actual damages was the $30,000 fee that Mannion would have received if defendants had hired him.[5]

The evidence with respect to the alleged profits of CHWA was equally plain. There was evidence that Coors paid CHWA $1.25 million for its services in 2002, the year in question, and that the fee covered the billboard containing the infringing image, two other billboards, and a number of broadcast commercials, none of which allegedly infringed. Indeed, plaintiff himself offered Coors' 2002 African-American Marketing Plan,[6] which showed that only a small part of the marketing expenses to be incurred by Coors in 2002 were directed at outdoor advertising, a point corroborated by testimony of Coors' Mr. Wills to the effect that less than 20 percent of the 2002 African-American marketing expenses were related to outdoor advertising. Ms. Williams, the CHWA principal, testified that CHWA probably netted a profit of about 16 percent and in any event not more than 20 percent on the Coors business.[7]

Plaintiff's infringer's profits claim against Coors at best was thin. The jury was entitled, perhaps compelled, to conclude that the infringement occurred only during part of 2002. Plaintiff's Exhibit 21 showed the following with respect to Coors Light, the brand in question:

| | 2000 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|
| Gross sales | $1,866 million | $1,920 million | $1,971 million | $1,963 million | $1,957 million |
| Net revenue | $1,793 million | $1,839 million | $1,894 million | $1,888 million | $1,885 million |
| Marginal gross profit | $732 million | $767 million | $803 million | $810 million | $818 million |

5 Grossman Decl. Ex. B, at 9:2-16, 14:17-20.

6 Dorman Decl. Ex. B.

7 *Id.* Ex. N, at 16:23-18:13.

Thus, marginal gross profit rose steadily from 2000 through 2004. Indeed, marginal gross profit rose in 2003, the year following the infringement, as compared with 2002, the year in which the infringement occurred.

Against this unhelpful evidence, plaintiff offered only the following theory: Copies of the billboard containing the infringing image were shipped to 18 cities across the country. The jury properly might have inferred, although there was no direct evidence, that they were displayed in those 18 markets. The African-American population in those cities is 0.574 percent of the United States population. Plaintiff therefore argued that the jury should award him 0.574 percent of the 2002 marginal gross profit on Coors Light, or $4.6 million.[8]

*Plaintiff's Trial Motion*

At the close of the proof, plaintiff moved for a directed verdict. The transcript of the motion follows:

> "MS. DORMAN [plaintiff's counsel]: I would like to move under Rule 50 an issue of substantial similarity that plaintiffs have met their burden as a matter of law and that the two images in issue are substantially similar as a matter of law. *On the issue of damages, I would move that plaintiffs [sic] have met their threshold burden of proof as to the damages for each defendant and that the defendants have failed as a matter of law to meet a preponderance of evidence anything to the contrary.*
>
> 'THE COURT: Anything else?
>
> "MS. DORMAN: I would move as a matter of law that the plaintiff has proved his copyright ownership.

[8] Grossman Decl. Ex. B, at 17:20-18:5.

"THE COURT: I didn't understand the ownership to be an issue. I understood validity to be an issue.

"MS. DORMAN: The validity of the copyright.

"THE COURT: Anything else?

"MS. DORMAN: No."[9]

The Court did not grant the motion.[10]

*The Charge*

Only one aspect of the charge is pertinent in light of the present posture of the case. The Court instructed the jury, without objection, as follows:

> "The plaintiff is entitled to recover the actual damages he has suffered as a result of an infringement. He must prove such damages by a preponderance of the evidence. Actual damages are the amount of money adequate to compensate Mannion for the amount of any revenue he lost as a result of an infringement. *In determining revenue lost as a result of an infringement, you may consider, among other things, any evidence of the amount a willing buyer would have paid to a willing seller at the time of the infringement for the right to use on the . . . billboards an image substantially similar to the Garnett photograph."*[11]

*The Verdict*

As noted, the jury returned a special verdict. It found, so far as damages are concerned, that plaintiff suffered actual damages in the amount of $30,000. It rejected entirely

---

9 Grossman Decl. Ex. A, at 2:21-3:11 (emphasis supplied).

10 Under Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law . . ., the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised y the motion."

11 Dorman Decl. Ex. O, at 14:14-20 (emphasis added).

plaintiff's infringer's profits claim against Coors, finding that plaintiff had not proved "that Coors received gross revenue from the sale of a product containing or using [the infringing] image."[12] It found that CHWA had "received gross revenue from the sale of a service containing or using the" infringing image of $1.25 million, that it incurred $1 million in expenses in producing that revenue, and that $200,000 of that revenue was attributable to factors other than the use of the infringing image.[13] Finally, it found that $30,000 of CHWA's profit attributable to the infringement was included in the actual damages award.[14]

*The Present Motion*

Plaintiff now seeks relief on the following grounds:

1. "Williams . . . failed to prove, by a preponderance of the evidence, that it incurred expenses in producing its gross revenue from the sale of a service containing or using the Iced Out image."

2. "Williams failed to prove, by a preponderance of the evidence, that any of its gross revenue from the sale of a service containing or using the Iced Out image was attributable to factors other than the use of that image."

---

[12] *Id.* Ex. P, ¶ 11(a).

[13] *Id.* ¶ 10(a)-(c).

[14] *Id.* ¶ 10(d).

3. "Plaintiff proved, by a preponderance of the evidence, that Coors received gross revenue from the sale of a product containing or using the Iced Out image."

4. "The profits of Defendants from the use of the infringing billboard should not be apportioned."

5. "There was no evidence to support the jury's finding that Plaintiff's actual damages were also included in Williams Advertising's profits."

## *Discussion*

### *A. Did Plaintiff Preserve the Grounds Now Relied Upon in Support of Judgment N.O.V.?*

Fed. R. Civ. P. 50(a) permits a motion for judgment as a matter of law at any time before a case is submitted to the jury. Such a motion, however, "must specify the judgment sought and the law and facts that entitle the movant to judgment."[15] If such a motion is not granted, the movant may renew it following a verdict.[16] The fact that a post-verdict Rule 50 motion is regarded as nothing more than a renewal of any pre-verdict motion carries with it certain corollaries. Pertinent here is the proposition that a district court may not grant relief under Rule 50 after verdict except on specific grounds upon which the movant relied in a pre-verdict Rule 50 motion.[17]

---

[15] FED. R. CIV. P. 50(a)(2).

[16] *Id.* 50(b).

[17] *E.g.*, *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir. 1993).

As the jury resolved all of the liability-related questions in plaintiff's favor, the focus of his motion is solely on damages. It must be considered in light of Section 504(b) of the Copyright Act,[18] which permits a successful infringement plaintiff to recover "any profits of the infringer that are attributable to the infringement" and that are not included in computing actual damages. It goes on to say that "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

The only mention of damages in plaintiff's pre-verdict motion was this sentence:

> "On the issue of damages, I would move that plaintiffs [*sic*] have met their threshold burden of proof as to the damages for each defendant and that the defendants have failed as a matter of law to meet a preponderance of evidence anything to the contrary."[19]

This was a rather elliptical way of presenting what I take to be plaintiff's position. The first part of this sentence, vague as it was, necessarily meant that plaintiff contended that he was entitled to *some* damages as against each defendant. The second part, read generously, presumably was intended to mean that plaintiff thought he was entitled to judgment as a matter of law to the effect that neither defendant incurred deductible expenses in generating any gross revenues and that there was no evidence that any gross revenues was attributable to factors other than the infringement. I consider each in turn.

---

[18] 17 U.S.C. § 504(b).

[19] Grossman Decl. Ex. A, at 2:24-3:3.

*1. "Threshold Burden of Proof"*

To the extent that the first part of the sentence sought relief on the theory that plaintiff was entitled as a matter of law to at least *some* damages against each defendant, it no longer is meaningful. The jury awarded damages against each defendant. Hence, the question whether plaintiff was entitled to such relief as a matter of law is academic.

To be sure, it is conceivable that the first part of the sentence might have been intended to suggest that plaintiff sought a determination that he had established as a matter of law that each defendant had reaped gross revenue within the meaning of Section 504(b) of the Copyright Act and thus established that plaintiff was entitled to recover that gross revenue in the absence of proof by each defendant of deductible expenses or an alternate cause. This may well have been in counsel's mind. In the weeks before, and during, the trial, plaintiff had argued that he would be entitled to recover all of the revenues generated by Coors from the sale of Coors Light upon proof of those gross revenues except to the extent, if any, that Coors established that costs should be offset against those revenues or that the revenues were not attributable to the infringement.[20] But speculation as to what was in counsel's mind, even well founded speculation, is not enough.

A Rule 50(a) motion must specify "the judgment sought and the law and facts that entitle the movant to judgment."[21] Thus, if plaintiff meant to seek relief on the ground that particular evidence had established as a matter of law that each of the defendants had generated gross revenues within the meaning of Section 504(b), counsel was obliged to say so specifically and to identify the

---

[20] *See generally* DI 79, 80, 85, 89.

[21] FED. R. CIV. P. 50(a)(2).

evidence upon which he relied.[22] As counsel did not do so, the Court may not properly construe the motion more broadly than the words spoken necessarily meant, viz. that plaintiff sought relief on the ground that the evidence established as a matter of law that he was entitled to at least some damages from each defendant. The broader and somewhat more speculative argument relating to the proof of gross revenues (plaintiff's ground 3) was not preserved. And the point in any case is academic. The jury concluded that CHWA earned gross revenues, thus mooting the issue as to that defendant. And while the jury did not so conclude as to Coors, plaintiff would not be entitled to infringer's profits against Coors in any event for reasons discussed below.

*2. Deductible Expenses and Other Causes*

Grounds 1, 2 and 4 address the question whether any parts of defendants' respective gross revenues were subject to reduction by deductible expenses or attributable to factors other than the infringement. Brief as the oral motion was, it undeniably went to those subjects. And while it might be argued that plaintiff failed to preserve these arguments because he framed the motion in terms of whether defendants had proved their position on those issues by "a preponderance of the evidence," terminology that goes to weight rather than legal sufficiency,[23] defendants do not make this argument. Accordingly, I conclude that Grounds 1, 2 and 4 were preserved.

---

22

*See, e.g.*, *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998); *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001); *Gordon v. County of Rockland*, 110 F.3d 886, 887 n.2 (2d Cir. 1997); *Holmes v. United States*, 85 F.3d 956, 962 (2d Cir. 1996); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir.1993) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir.1993)).

23

I am unpersuaded by their argument that this branch of plaintiff's Rule 50(a) motion was insufficiently specific. Plaintiff's meaning in this regard was clear enough.

*3. Inclusion of Actual Damages in Infringer's Profits*

Plaintiff's fifth ground for relief is the contention that the evidence was insufficient to permit a jury to find that any actual damages that he sustained were included also in any infringer's profits that might be awarded. But plaintiff did not object to submission of this question to the jury. Accordingly, I conclude that the issue was not preserved. In any case, there would be no merit to the argument.

## *B. Judgment as a Matter of Law – The Merits*

*1. The Legal Standard*

The standard governing the merits of this motion is clear:

> "In considering a motion for judgment as a matter of law, the district court 'must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence . . . . "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.". . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.'"[24]

*2. The First Branch of the Motion*

As noted, to the extent that plaintiff's motion sought a ruling that he was entitled to at least some damages from each defendant, the matter is moot by virtue of the jury's award of actual damages as against both defendants.

---

24. *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (quoting *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000) (in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))) (emphasis omitted).

Assuming, contrary to my conclusion, that the plaintiff had preserved the argument that he was entitled to judgment as a matter of law to the effect that each of the defendants had gross revenues, that point in any case would lack merit.

The jury found that CHWA had gross revenues of $1.25 million. The point therefore is moot as to that defendant.

There was, in addition, ample evidence to justify the jury's finding that Coors did not receive gross revenues from the sale of a product containing or using the infringing image. Plaintiff's Exhibit 21 demonstrated that Coors earned marginal gross profit of more than $767 million on sales of Coors Light in the years immediately preceding and following the year in which the infringement occurred. This, coupled with the jury's assessment of the significance of the infringing image to the one billboard design in which it was used, the scant evidence of actual display of the billboard containing the infringing image, the relatively small part that outdoor advertising played in the African-American marketing plan for 2002, and the relatively small part that the African-American marketing plan played in the overall marketing of Coors Light was more than sufficient to justify a jury conclusion that the use of the infringing image yielded no gross revenues to Coors. While the jury might have been entitled to reach a different conclusion, it certainly was not obliged to do so.

*3. The Second Branch of the Motion – Deductible Expenses and Other Causes*

*a. CHWA*

There was evidence that CHWA was paid approximately $1.25 million for the services that included the preparation of the billboard that included the infringing image. Its

president testified that its profit margin typically was 16 to 20 percent and never higher than the latter figure. To the extent that plaintiff sought a determination that there was no evidence of any deductible expenses, the motion plainly was, and remains, without merit. The jury was entitled to conclude that the gross revenues should be reduced by 80 percent to take account of the expenses incurred in generating them, leaving $250,000 of profit potentially attributable to the sale of services including the infringing image.

Similarly, there was and is no basis for the contention that the evidence before the jury was insufficient to permit a finding that at least some of "the elements of profit [were] attributable to factors other than the copyrighted work." There was undisputed evidence that CHWA's services went far beyond the preparation of the one billboard that contained the infringing image. It prepared two other billboards and performed many other services. Plaintiff therefore was not entitled to a determination as a matter of law that none of the profit was attributable to factors other than the infringement.

*b. Coors*

Assuming for purposes of argument that plaintiff was entitled to a determination that Coors had gross revenue from the sale of a product containing or using the infringing image, thus invoking the infringer's profits measure of damages under Section 504(b), plaintiff would encounter yet another problem.

Judgment for plaintiff that Coors earned gross revenue from use of the infringing image would not alone have entitled plaintiff to recover that gross revenue, as a determination then would have been required as to deductible expenses and alternate causes. The verdict form that was

submitted to the jury without objection by plaintiff, however, instructed that the jury was to determine whether Coors' gross revenues, if any, were attributable to causes other than the infringement or should be reduced by deductible expenses *only* if it first found that Coors "received gross revenue from the sale of a product containing or using" the infringing image.[25] As the jury did not find that Coors received such gross revenues, it made no findings as to deductible expenses and alternate causes. Thus, even if plaintiff were correct in arguing that the jury was obliged to find that Coors earned gross revenues from the sale of a product containing or using the infringing image, there were no findings as to these points, which in that event would have been pivotal.

Rule 49(a) deals with just such a contingency. It provides in relevant part:

> "If in so doing [i.e., submitting the case to the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such a demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."[26]

In this case, it is perfectly obvious, and I find, that even if all of the $1.971 billion in gross revenue earned by Coors on the sale of Coors Light in 2002 properly were regarded as gross revenue within the meaning of Section 504(b), Coors incurred deductible expenses of at least $1.894 million, yielding a marginal gross profit of $803 million. Indeed, plaintiff's counsel admitted as much in her summation. Further, for all of the reasons articulated above, I find that all of that marginal gross profit is attributable to factors other than the copyrighted work. The evidence that

---

25 Dorman Decl. Ex. P, at 5-6.

26 FED. R. CIV. P. 49(a).

Coors Light profits rose in the year immediately following the cessation of the infringement alone is sufficient to warrant this conclusion, although I do not rest the finding exclusively on this basis.

*4. Inclusion of Actual Damages in CHWA's Profits*

Assuming *arguendo* that plaintiff had preserved his argument that the evidence was insufficient to find that any of the actual damages were included in CHWA's profits, the argument would be without substantial merit.

Plaintiff's actual damages theory was that he was entitled, on a lost revenues theory, to the $30,000 fee that would have been paid to plaintiff had he been hired to shoot the image for the billboard. That fee, he said, would have included the right to use the new image and thus to infringe his rights as the holder of the copyright in the Garnett image. Indeed, plaintiff's counsel referred to that fee in closing as a usage fee.[27]

The Court instructed the jury, without objection by plaintiff, that in determining actual damages, it could consider "any evidence of the amount a willing buyer would have paid to a willing seller at the time of the infringement for the right to use on the . . . billboards an image substantially similar to the Garnett photograph."[28] While one might question whether there was any evidence to justify the conclusion that the $30,000 fee request *rejected* by CHWA was probative of what "a willing buyer" would have paid for the rights, any error in that regard favored the plaintiff.

---

[27] Grossman Decl. Ex. B, at 14:17-20.

[28] Dorman Decl. Ex. O, at 14:18-20.

In view of plaintiff's closing argument and this instruction, plaintiff would have had no basis for complaint even had the point been preserved.

By declining to pay this fee to plaintiff, CHWA saved at least the difference between what it paid the photographer who shot the billboard photograph and what they would have paid plaintiff had they hired him, which was $24,665. The jury was entitled to infer that this saving increased CHWA's profit by approximately a like amount. I therefore would not disturb its finding that all of the actual damages of $30,000 were included in CHWA profits attributable to the infringement that the jury found even if the point had been preserved.

### *C. New Trial*

Plaintiff in the alternative seeks a new trial, arguing that the damages verdict was against the weight of the evidence.

In determining whether to order a new trial on the ground that a verdict is against the weight of the evidence:

> "The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not."[29]

In view of what has been said already, there was no miscarriage of justice here. While CHWA's behavior with respect to the infringement bordered on the flagrant, the actual damages

---

29 *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978) (quoting 6A MOORE'S FEDERAL PRACTICE ¶ 59.08[5], at 59-160-59-161 (1973)).

verdict in fact accepted the theory that plaintiff offered. Plaintiff's objection to the infringer's profits verdict against CHWA is little more than a quibble about something concerning which reasonable persons might disagree. Moreover, plaintiff certainly could have attempted to present far more compelling evidence of the profitability of CHWA's Coors business had he seen fit to do so.[30] The infringer's profits case against Coors was an attempt to build a mighty edifice on a foundation of sand, and it fell for the same reason – lack of the proper material.

That is not to say that the damages verdict was entirely satisfying given the nature of the infringement. Section 504(c) of the Act[31] provides for statutory damages in an appropriate case. This remedy was designed by Congress to provide relief for willful infringement where, among other circumstances, proof of actual damages and infringer's profits are difficult. But plaintiff disabled himself from seeking such damages by failing to register his copyright in the Garnett photograph in a timely manner.[32]

---

30 *See generally Mannion v. Coors Brewing Co.,* No. 04 Civ. 1187 (LAK), 2007 WL 3340925, at *6 (S.D.N.Y. Nov. 7, 2007).

31 17 U.S.C. § 504(c).

32 *See id.* § 412(2); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.04[D] (2007).

*Conclusion*

For the foregoing reasons, plaintiff's motion is denied in all respects.

SO ORDERED.

Dated: January 4, 2008

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)